IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

        Plaintiff,

vs.                                                                     Crim. No. 15-619 MCA

ROSANN TERCERO and
REY ALEJANDRO DOMINGUEZ-PEREZ,

        Defendants.

## ORDER

This case is before the Court upon Defendant Rosann Tercero's *Motion to Suppress Evidence Derived as a Result of an Unlawful Seizure and Arrest* [Doc. 63], and Defendant Rey Alejandro Dominguez-Perez's *Motion to Suppress Evidence Derived as a Result of an Unlawful Seizure and Arrest* [Doc. 90]. The Court has considered the written submissions of the parties, the oral arguments of counsel, the evidence adduced at hearing in support of and in opposition to Defendant's motion, the record in this case and the applicable law, and is otherwise fully advised.

**FINDINGS OF FACT**

The Court finds as follows:

On February 5, 2015, the DEA asks New Mexico State Police Officer Shaun Wood, who is patrolling I-40 west of Albuquerque, to develop grounds to stop a black Nissan Maxima with a certain license number. The vehicle in question is occupied by Defendants Tercero and Dominguez-Perez. Dominguez-Perez is driving; Tercero is in the

front passenger seat. Officer Wood observes Defendants' vehicle make an un-signaled lane change as it overtakes a tractor trailer travelling in the right lane. Officer Wood engages his emergency lights and follows Defendants' vehicle. Defendants' vehicle pulls over and stops on the shoulder of the highway. Officer Woods stops his vehicle 20 or so feet behind Defendants' vehicle.

Officer Wood approaches Defendants' vehicle from the passenger side. Speaking through the open passenger-side window, he identifies himself and explains that he stopped them because their vehicle made an un-signaled lane change. Officer Wood is a large, imposing figure. He is wearing a tactical vest and is armed with a clearly visible sidearm. During the encounter with Defendants he is professional, and, with the exception of his intrusive questioning of Defendants about their personal affairs, polite.

Officer Wood asks for Dominguez-Perez's license and the "vehicle information." Dominguez-Perez admits that he does not have a driver's license. He gives Officer Wood an ID card issued by the government of Mexico. Tercero gives Officer Wood the vehicle's registration and proof of insurance. Officer Wood directs Dominguez-Perez to get out of the vehicle and to follow Officer Wood back to his patrol vehicle. As is his practice, Officer Wood positions Dominguez-Perez next to the right front fender of his patrol vehicle. Officer Wood and Dominguez-Perez are separated by the open passenger-side door of Officer Wood's patrol vehicle.

As Officer Wood runs record checks and begins preparing a citation, he briefly interrogates Dominguez-Perez. He learns that the vehicle belongs to Dominguez-Perez's mother-in-law and that the woman in the passenger seat of Defendants' vehicle is

Dominguez-Perez's wife, that she has a driver's license, and that the car belongs to his mother-in-law. He inquires about Defendants' itinerary. Dominguez-Perez tells Officer Wood that he and Tercero are going to Phoenix to visit Tercero's ailing father. It is apparent to Officer Wood that Dominguez is having difficulty communicating with him in English and that English is not Dominguez-Perez's primary language. Officer Wood tells Dominguez-Perez that Tercero will have to drive because he cannot continue to drive without a driver's license. Officer Wood tells Dominguez-Perez to "just give me a second" so that he can check the VIN and obtain Tercero's driver's license.

    Leaving Dominguez-Perez standing by the patrol vehicle, Officer Wood returns to Defendants' vehicle. Speaking through the front passenger side window, Officer Wood tells Tercero that he is going to check the vehicle's "numbers" and begins to tell her that Dominguez-Perez cannot drive because he does not have a driver's license. Tercero interrupts, telling Officer Wood that "I'll drive then" as she has a driver's license. Officer Wood asks her "to get it out for me." He checks the VIN number on the driver's side door. Tercero hands her driver's license to Officer Wood. He briefly interrogates Tercero, clearly for the purpose of seeing if Tercero and Dominguez-Perez's stories are consistent. During this first interrogation, Tercero confirms that Dominguez-Perez is her husband, that the Nissan is her Mother's, and that she and Dominguez-Perez are going to Phoenix to see her father.

    Officer Wood returns to his patrol vehicle to run a check on Tercero's license. Officer Wood explains to Dominguez-Perez that he cannot continue to drive and that Tercero will have to drive, as she has a valid license. Officer Wood points out that there

3

had been a pickup truck behind Defendants' vehicle and a tractor trailer in front of their vehicle at the time Dominguez-Perez made the un-signaled lane change. Officer Wood issues Dominguez-Perez a citation for failure to signal the lane change and gives him a warning for driving without a license. He explains to Dominguez-Perez the options for dealing with the citation. Dominguez-Perez agrees to pay the fine and signs the citation. Officer Wood hands a copy of the citation to Dominguez-Perez, pointing out the instructions on the back. He hands Dominguez-Perez his ID, the vehicle registration and proof of insurance, and Tercero's driver's license. He tells Dominguez-Perez "you're free to go." Dominguez-Perez walks back toward the passenger side of Defendants' vehicle. When Defendant is a little over halfway back, Officer Woods, using a loud, peremptory tone of voice, calls out to him: "Excuse me sir!" Dominguez-Perez scuttles back to Officer Wood's patrol vehicle. Officer Wood asks Dominguez-Perez "Be OK if I ask you some questions?" Dominguez-Perez responds "Uh-huh," which Officer Wood takes as "yes." Officer Wood interrogates Dominguez-Perez about Defendants' itinerary and Tercero's father's illness. Officer Wood tells Dominguez-Perez to "hold on a second."

Leaving Dominguez-Perez standing by his patrol vehicle, Officer Wood re-approaches Tercero, who is still seated in the passenger seat. He explains that he cited Dominguez-Perez for failure to signal a lane change, but just warned him about driving without a license. He tells Tercero that "since you're here, your license is good, you're going to have to drive, OK?" He then says "He's free to go. I asked him if I could ask him some questions and he agreed. Can I ask you some questions?" Tercero replies "Sure." During this second interrogation Officer Wood asks Tercero about her father and

4

about Defendants' itinerary, again clearly for the purpose of seeing if Tercero and Dominguez-Perez's stories are consistent.

Officer Wood returns to his patrol vehicle and resumes his interrogation of Dominguez-Perez, who has been standing by the patrol vehicle while Officer Wood interrogated Tercero. Officer Wood asks Dominguez-Perez "what are you responsible for in the vehicle, what's yours?" He asks Dominguez-Perez about Defendants' belongings and luggage. He asks if there are guns, weapons, drugs or large amounts of cash in the vehicle. Dominguez-Perez denies having weapons or drugs, but admits he has $2,000 in cash. Officer Wood asks Dominguez-Perez "Can I search the vehicle?" Dominguez-Perez responds "Yeah." Officer Wood gives Dominguez-Perez a consent form printed in both English and Spanish. He asks Dominguez-Perez to print his name on the form, then read the form making sure he understands it, and if he still agrees, to sign the consent to search form. Dominguez-Perez asks "Can I ask my wife as to this?" Officer Wood replies "No, this is just you. I'm going to ask her as well." Dominguez-Perez signs the consent form.

By this point other officers have arrived. One of the officers removes Tercero from Defendants' vehicle. The officers keep Tercero and Dominguez-Perez separated from one another. Officer Wood interrogates Tercero a third time. He asks "what are you responsible for in the car? What's yours?" She responds "Everything." He asks if there are any weapons or drugs in the vehicle. Tercero responds "Nothing—you can go check the car." Officer Woods asks if there are large amounts of money in the car. He interrogates Tercero about the presence of money and Defendants' finances. Officer Woods asks Tercero "Can I search the vehicle?" Tercero responds "Sure, go ahead."

5

Officer Wood gives Tercero the consent form previously signed by Dominguez-Perez and asks her to read it. She fills in her name and signs it.

During the subsequent search of Defendants' vehicle, officers find two Zip lock bags containing bundles of cash. During the search and subsequent detention, Officer Wood continues to interrogate Defendants. Defendants and the cash are taken to the Albuquerque office of the New Mexico State Police. There, a drug dog alerts to the box containing the cash seized from Defendants' vehicle.

**CONCLUSIONS OF LAW**

**Defendant Dominguez-Perez**

"A traffic stop is a 'seizure' within the meaning of the Fourth Amendment. . . ." *United States v. Trestyn*, 646 F.3d 732, 741 (10th Cir. 2011). A court analyzes traffic stops under principles developed for investigative detentions. *Id.* at 742. A reviewing court must be satisfied that the stop was (1) justified at its inception and (2) reasonably related in scope to the circumstances that initially justified the stop.

The circumstances witnessed by Officer Wood would have led a reasonable officer in Officer Wood's position to believe he had witnessed a violation of NMSA 1978, § 66-7-325(A), as that statute has been interpreted by the New Mexico Supreme Court. *State v. Hubble*, 2009-NMSC-014. The stop was justified at its inception.

The Supreme Court has adopted a *per se* rule permitting police officers as a matter of course to order the driver of a lawfully stopped vehicle to exit his vehicle. *Pennsylvania v. Mimms*, 434 U.S. 106 (1977). Officer Wood acted lawfully in directing Dominguez Perez to get out of Defendants' car.

A law enforcement officer conducting a routine traffic stop 'may generally request a driver's license, registration, and other required papers, run requisite computer checks, and issue citations or warnings as appropriate.'" *United States v. Cash*, 733 F.3d 1264, 1273 (10th Cir. 2013). Officer Wood conducted the traffic stop with reasonable diligence and within the parameters identified in *Cash*.

Officer Wood's authority to detain Defendants terminated when Officer Wood issued the citation and warning and returned Dominguez-Perez's ID, the vehicle registration and proof of insurance and Tercero's driver's license, and told him he was free to go. *United States v. Guerrero-Espinoza*, 462 F.3d 1302, 1306 (10th Cir. 2006). At that moment, a reasonable motorist in Dominguez-Perez's position would have felt free to resume his trip. However, almost immediately afterward, as Dominguez-Perez was returning to Defendants' vehicle, Officer Wood called out to Dominguez-Perez in a commanding tone of voice.[1] Notwithstanding Officer Wood's prior statement that "you're free to go," a reasonable motorist in Dominguez-Perez's position would not have felt free to ignore Officer Wood, continue walking back to his vehicle, switch seats with Tercero, and leave.[2] *See United States v. Bradford*, 423 F.3d 1149, 1159 (10th Cir. 2005) (noting that an officer's use of "a commanding tone of voice" may indicate to motorist that "compliance might be compelled).

---

[1]Officer Wood clearly was employing a variant of "the old highway patrol two-step," *United States v. White*, 584 F.3d 935, 943 (10th Cir. 2009), also known as the "Lt. Columbo gambit," 4 LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.3(g) at 550 (5th ed. 2012). Officer Wood was playing to an anticipated reviewing court when he told Defendant that he was "free to go," knowing that he had no intention of allowing Defendant to leave without further interrogation.

[2]In considering whether a reasonable motorist in Defendant's position would have felt free to leave, the Court bears in mind that Officer Wood is a large, imposing figure. He was wearing a tactical vest and carrying a clearly visible sidearm. He had ordered Defendant out of his vehicle. He had asked questions about Defendant's personal affairs.

7

The Court concludes that in this case, the entire purpose of the stop by Officer Wood was to groom the Defendant into feeling powerless, such that he has no choice but to acquiesce in the officer's show of authority.

At this point Officer Wood had not observed circumstances justifying a reasonable suspicion that Defendants were engaged in criminal activity; at best he had a hunch that Defendants were involved in drug trafficking.[3] Thus, when Officer Wood re-seized Dominguez-Perez, he lacked sufficient justification to detain him. *United States v. Elliot*, 107 F.3d 810, 813 (10th Cir. 1997) (observing that "an officer's 'inchoate and unparticularized suspicion or "hunch"' is insufficient to give rise to reasonable suspicion").

In the absence of reasonable suspicion, the United States must rely on consent to justify the further detention during which Officer Wood questioned Defendant. *Id*; United *States v. Archuleta*, 619 Fed. App'x 683, 687 (10th Cir. 2015) ("[I]f neither of those factors [reasonable suspicion or consent] is present, evidence derived from further questioning . . . is impermissibly tainted in Fourth Amendment terms."). To the extent that the United States relies on consent, the United States bears the burden of proving *both* that Defendant's consent was voluntary in fact *and* that there was a break in the causal connection between the illegal seizure and Defendant's consent. *See McSwain*, 29 F.3d at 562 n.2.

---

[3] Defendants' versions of their itinerary were generally consistent. The principal inconsistency was with respect to their address. Dominquez-Perez gave his address as 6615 Lamy Street, while the address on Tercero's driver's license was 8708 Alberta. However, Dominguez-Perez told Officer Wood that the Lamy Street address was a *new* address, a circumstance that would explain the inconsistency.

8

The Court need not decide whether Defendant's consent was voluntary because the United States cannot establish the requisite break in the causal connection between the illegal seizure and Defendant's decision to answer Officer Wood's questions. Our Tenth Circuit Court of Appeals deems three factors taken from *Brown v. Illinois*, 422 U.S. 590 (1975), as "especially relevant" to whether the government has established a causal break. *McSwain*, 29 F.3d at 562. Those factors are "[1] the temporal proximity of the illegal detention and the consent, [2] any intervening circumstances, and, [3] particularly, the purpose and flagrancy of the officer's unlawful conduct." *Id.* As to the first *Brown* inquiry, Defendant answered Officer Wood's questions during the unlawful detention. As to the second inquiry, there is a complete absence of "intervening circumstances"— facts or events [that] create a discontinuity between the illegal [detention] and the consent such that the original illegality is weakened." *United States v. Gregory*, 79 F.3d 973, 980(10th Cir. 1996). As to the third inquiry, Officer Wood clearly was engaged in a fishing expedition for evidence of illegal drug activity. *United States v. Fox*, 600 F.3d 1253, 1261 (10th Cir. 2010) (noting that purposeful and flagrant conduct may be found where "the misconduct was investigatory in design and purpose and executed 'in the hope that something might turn up'"). There was no break in the causal connection between Officer Wood's unlawful re-seizure of Defendant and Defendant's decision to consent to questioning.

In the alternative, assuming arguendo that Defendant gave valid consent for Officer Wood to ask a few questions, Officer Wood exceeded the scope of that consent when, having further interrogated Defendant, he directed Defendant to "hold on" so that Officer

Wood could return to Defendants' vehicle to separately interrogate Tercero. The scope of consent is measured by what a typical reasonable person would have understood based on the verbal exchange between the person and the officer. *Elliot*, 107 F.3d at 815. Defendant consented to answer some questions, which he did; Defendant did not consent to be detained by the side of the highway indefinitely so that Officer Wood could conduct an investigation of suspected criminal activity. Having exhausted Defendant's consent Officer Wood did not ask him if he would consent to further detention. *Cf. Guerrero-Espinoza*, 462 F.3d at 1306 (noting evidence that officer asked driver if he could speak separately to other occupant of vehicle). A reasonable person in Dominguez-Perez's position would not have felt free to ignore Officer Wood's direction to "hold on," walk back to his vehicle, switch seats with Tercero, and leave. *See United States v. Richardson*, 385 F.3d 625, 630 (6th Cir. 2004) (holding that officer seized motorist when, after engaging in consensual questioning of motorist, officer said "Okay, just hang out right here for me, okay?"). From this point, Dominguez-Perez was unlawfully detained. Officer Wood's refusal to allow Dominguez-Perez to consult with Tercero prior to executing the consent form is further evidence that Dominguez-Perez was being detained pursuant to a show of authority.

To the extent the United States relies on Dominguez-Perez's consent to justify the subsequent search of Defendants' vehicle, it bears the burden of showing the requisite causal break between the illegal detention and Dominguez-Perez's consent to the search of Defendants' vehicle, a burden which it has not met. As to the first *Brown* inquiry, Defendant agreed to the search after being unlawfully detained and interrogated. As to

the second inquiry, there is a complete absence of "intervening circumstances"—facts or events [that] create a discontinuity between the illegal [detention and interrogation] and the consent such that the original illegality is weakened." G*regory*, 79 F.3d at 980.  As to the third inquiry, Officer Wood clearly was engaged in a fishing expedition for evidence of illegal drug activity.

**Defendant Tercero**

At the point that Officer Wood told Dominguez-Perez to "hold on," so that he could return to Defendants' vehicle to separately interrogate Tercero, Officer Wood lacked legal authority to detain either Dominguez-Perez or Tercero based on the traffic violation.  The United States argues that "[w]here, as here, a defendant consents to additional questioning, 'there is no seizure, and hence the Fourth Amendment's strictures are not implicated.'" [Doc. 108 at 12]  The United States' argument is foreclosed by *Guerrero-Espinoza*.

There is no evidence that Tercero knew or could have known that Officer Wood had given her driver's license to Dominguez-Perez.  Since Tercero knew that she was the only person in the car with a valid driver's license, a reasonable person in Tercero's position would not have believed that she was free to leave unless and until Officer Wood returned her driver's license. Our Tenth Circuit Court of Appeals follows "the bright line rule that the [prolongation of a] traffic stop *may not* be deemed consensual unless the driver's documents have been returned to her." *Guerrero-Espinoza*, 462 F.3d at 1308-09.  Under the Court of Appeals' bright line rule, Defendant's decision to respond to Officer

11

Wood's questioning cannot be deemed consent to prolong the traffic stop; "rather, it was the product of [her] unlawful detention." *Id.* at 1310.

When Officer Wood returned to Defendants' vehicle after obtaining Dominguez-Perez's consent to search, Tercero still was unaware that Officer Wood had given her driver's license to Dominguez-Perez. Thus, her decision to respond to Officer Wood's further questioning cannot be deemed consensual; "rather, it was the product of [her] unlawful detention." *Id.*

When Tercero consented to the search of Defendants' vehicle she was being unlawfully detained. To the extent that the United States relies on consent to justify the search of Defendants' vehicle, the United States bears the burden of proving both that Tercero's consent was voluntary in fact and that there was a break in the causal connection between the illegal detention and Defendant's consent. *See McSwain*, 29 F.3d at 562 n.2. As with Dominguez-Perez, the Court need not decide whether Tercero's consent to search was voluntary because the United States cannot establish the requisite break in the causal connection between the illegal detention and Tercero's consent to search. As to the first *Brown* inquiry, Tercero agreed to the search after being unlawfully detained and interrogated. As to the second inquiry, there is a complete absence of "intervening circumstances"—facts or events [that] create a discontinuity between the illegal [detention and interrogation] and the consent such that the original illegality is weakened." G*regory*, 79 F.3d at 980. As to the third inquiry, Officer Wood clearly was engaged in a fishing expedition for evidence of illegal drug activity.

**Conclusion**

The statements made by Dominguez-Perez subsequent to Officer Wood's statement "you're free to go" were the fruits of an illegal detention. In the alternative, the statements made by Dominguez-Perez subsequent to Officer Wood's order to "hold on a second" were the fruits of an illegal detention. These statements must be suppressed.

Tercero's responses to interrogation by Officer Wood were the fruits of an unlawful detention. These statements must be suppressed.

Dominguez-Perez's consent to the search of Defendants' vehicle was the fruit of an illegal detention. Defendant Tercero's consent to the search of Defendants' vehicle likewise was the fruit of an illegal detention. The United States has not shown the requisite causal break between the illegal detention and Defendants' consent to the search of their vehicle. The evidence seized from Defendants' vehicle must be suppressed as the fruits of an illegal detention.

**WHEREFORE, IT HEREBY IS ORDERED** that Defendant Rosann Tercero's *Motion to Suppress Evidence Derived as a Result of an Unlawful Seizure and Arrest* [Doc. 63], and Defendant Rey Alejandro Dominguez-Perez's *Motion to Suppress Evidence Derived as a Result of an Unlawful Seizure and Arrest* [Doc. 90] are **granted**.

So ordered this 15th day of June, 2016.

_____
M. CHRISTINA ARMIJO
Chief United States District Judge